UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HERLIHY MOVING &**
**STORAGE, INC., et al.,**

         **Plaintiffs,**         Case No.: 2:09-cv-931
                                                    JUDGE GREGORY L. FROST
    **v.**                                          Magistrate Judge Norah McCann King

**ADECCO USA, INC.,**

         **Defendant.**

**OPINION AND ORDER**

      This matter is before the Court on Defendant's motion for summary judgment (Doc. # 19), Plaintiffs' memorandum in opposition (Doc. # 20), and Defendant's reply memorandum (Doc. # 21). For the reasons that follow, the Court **GRANTS in part and DENIES in part** Defendant's motion.

**I.  Background**

      Plaintiff Herlihy Moving & Storage, Inc. ("Herlihy Company") maintains an office in Grove City, Ohio. In 2003, a salesperson employed by Defendant Adecco USA, Inc. ("Adecco"), offered Adecco's employee placing services to Herlihy Company. Herlihy Company needed an office employee at that time, so it retained Adecco to assist it in finding one. James Herlihy ("Herlihy"), part owner of Herlihy Company and the manager of its Grove City branch, was the person with whom Adecco worked in finding and placing an employee.

      Herlihy had 10 to 20 telephone conversations with the Adecco employee whose name he does not recall nor does Adecco have a record of the name of the individual. The Adecco

1

employee met with Herlihy at Herlihy Company's Grove City office in August of 2003. The Adecco employee interviewed Herlihy for 15 to 30 minutes about the type of employee he wanted. Herlihy indicated to her that Herlihy Company needed an employee to, among other things, perform payroll and bookkeeping, receive customer payments, prepare paperwork, and make bank deposits. They also discussed how the billing for the employee would occur, Adecco's fees, the salary the newly hired employee would earn, and the skills test that Adecco conducted on applicants. Herlihy testified that he also asked if a background check would be done on the candidates, to which the Adecco employee answered that it would. Adecco avers that, although it currently performs background checks on all of its employees, its policy during 2003 was to conduct background checks on candidates only if requested to do so by a customer. Adecco has no records that show that Herlihy requested a background check for Nickison.

Herlihy was interested in Adecco's "temp-to-hire" offer. Under that offer, Adecco would supply a temporary employee to Herlihy Company for a period of time and it would decide if it wanted to hire the employee full time in which case Herlihy Company would pay Adecco a negotiated buyout fee. If Herlihy Company was not satisfied with the temporary employee, Adecco would place a different employee with Herlihy Company on a temp-to-hire basis.

Shannon Nickison, formerly known as Shannon Croghan, applied for employment with Adecco on August 21, 2003. Adecco provided Nickison as a candidate for employment with Herlihy Company. Herlihy interviewed the three candidates provided by Adecco, including Nickison. Following the interviews, Herlihy indicated to Adecco that he wanted Nickison for the position and he hired her as a temp-to-hire employee. Herlihy and Adecco negotiated Adecco's rate of pay. Adecco's then Regional Operations Manager, Kari Rolsen, explained that

"[f]or temporary [employees] there's a markup negotiated on top of the pay rate." (Rolsen Depo. at 21.)

Nickison began working for Herlihy Company on September 11, 2003 and was employed on a temp-to-hire basis for two months. Herlihy Company was satisfied with Nickison, so Herlihy and Adecco negotiated a buyout fee of $300.00 for Nickison. At that time Nickison ceased being an Adecco employee and became a full-time Herlihy Company employee.

From approximately 2005 through 2008, Nickison stole over $200,000 from Herlihy Company by depositing customer checks written to Herlihy Company into her own bank account and falsifying payroll records to show that certain people worked for Herlihy Company when they did not and then depositing their paychecks directly into her bank account. Herlihy Company discovered Nickison's fraudulent activity in June of 2008. Nickison was indicted, convicted, and sentenced to prison for her criminal activities while employed by Herlihy Company. Nickison is currently serving her prison sentence related to those crimes.

On October 19, 2009, Herlihy Company and Herlihy Logistics, Inc. filed this action. Plaintiffs allege that Adecco had contractually agreed to perform a background check on Nickison, which Plaintiffs claim would have prevented them from hiring Nickison and, ultimately, prevented the crimes Nickison perpetrated against Herlihy Company. With regard to her criminal history, on September 22, 1998, Nickison was indicted for felony theft in the Franklin County Court of Common Pleas. Nickison pled guilty to felony theft on February 25, 1998. On March 12, 1999, Nickison was indicted in the Franklin County Court of Common Pleas for passing bad checks, a felony. On July 1, 1999, Nickison pled guilty to passing bad checks. On May 17, 2000, Nickison pled guilty to and was sentenced on a bank fraud charge in

Case Number 2:00-cr-00083 in the Southern District of Ohio, Eastern Division.

Plaintiffs allege claims for relief for breach of written contract, breach of oral contract, and negligence.

## II.  Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### III.  Discussion

Adecco moves for summary judgment on all three of Plaintiffs' claims for relief.

### A.  Breach of Written Contract

Adecco argues that it is entitled to summary judgment on Plaintiffs' breach of written contract claim because there was no written contract between Plaintiffs and Adecco.  Adecco offers as support for its contention the deposition testimony of Herlihy, who specifically states that he was not sure if a written contract ever existed but he "just think[s] that there would be" one in this type of situation.  (Herlihy Dep. at 101-02, 190.)  Herlihy also testified that if there had been a written contract, it would have been kept by Herlihy Company in the normal course of its business; however, he can locate no such document.  *See id.*  Finally, Herlihy testified that if a written contract ever existed he did not know the terms of the contract.  *See id.*

In their memorandum in opposition, Plaintiffs do not respond to Adecco's argument nor attempt to explain Herlihy's deposition testimony regarding his lack of knowledge of any written contract.  If there is no written contract, there certainly can be no claim for breach of a written contract.  *See Doner v. Snapp*, 98 Ohio App.3d 597, 600 (Ohio App. 1994) ("a plaintiff must present evidence on . . . the existence of a contract" to "successfully prosecute a breach of contract claim").

Consequently, even when viewing the evidence in the light most favorable to Plaintiffs, Adecco is entitled to summary judgment on Plaintiffs' breach of written contract claim because Plaintiffs, who have the burden of proof at trial, have failed to make a showing sufficient to establish the existence of an element that is essential to their claim, *i.e.*, the existence of a written contract. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiffs' breach of written contract claim for relief.

## B.  Breach of Oral Contract

Plaintiffs claim that they had an oral contract with Adecco that provided for Adecco to offer a background checked temp-to-hire candidate to Herlihy Company.

> A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty. Restatement of the Law 2d, Contracts (1981) 5, Section 1.  In other words, an express contract connotes an exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound. *Cuyahoga Cty. Hospitals v. Price*, 64 Ohio App.3d 410, 415 (1989).  In order to declare the existence of a contract, the parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991); *see, also, Alligood v. Proctor & Gamble Co.*, 72 Ohio App.3d 309 (1991).

*Ford v. Tandy Transp.*, 86 Ohio App. 3d 364, 380 (Ohio App. 1993). *See also Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (Ohio 2002) (an oral contract "may be enforceable if there is sufficient particularity to form a binding contract") (citation omitted).

"Generally, a plaintiff must present evidence on several elements to successfully prosecute a breach of contract claim.  Those elements include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff."

6

*Doner*, 98 Ohio App.3d at 600 (citing 2 Ohio Jury Instructions (1993), Section 253.01, at 111-112 and *Am. Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 175 (Ohio App. 1991)).

Adecco argues that it is entitled to summary judgment on Plaintiffs' breach of oral contract claim because the claim was not timely filed and because, even if it had been filed timely, Plaintiffs have not described the contract terms with specificity.

**1. Is Plaintiffs' breach of oral contract claim time barred?**

Under Ohio law, "an action upon a contract not in writing, express or implied . . . shall be brought within six years after the cause thereof accrued." Ohio Rev. Code § 2305.07. Adecco argues that Plaintiffs failed to file their breach of oral contract claim within this six year period. Adecco reasons that the breach of the oral contract occurred prior to the interviews of the candidates provided to Herlihy Company by Adecco that took place between August 29, 2003 and September 3, 2003. Thus, Adecco concludes that Plaintiffs were required to file their lawsuit alleging such claims by no later than September 3, 2009. Plaintiffs, however, did not file their complaint until September 10, 2009, more than one week after the applicable limitations period expired.

In their memorandum in opposition, Plaintiffs argue that "[u]nder Ohio law, a cause of action for breach of oral contract does not accrue until the plaintiff discovers the failure to perform as agreed." (Doc. # 20 at 8) (citing *Whittle v. Procter & Gamble*, 589 F. Supp.2d 944, 949 (2008) (citing *Kotyk v. Rebovich*, 87 Ohio App.3d 116, 121 (Ohio Ct.App. 1993), *abrogated on other grounds*, *Sutton v. Mt.Sinai Med. Ctr.*, 102 Ohio App.3d 641 (Ohio Ct. App 1995); *Biro v. HartmanFuneral Home*, 107 Ohio App.3d 508, 515 (Ohio Ct.App. 1995))). This Court agrees.

Herlihy did not discover that Adecco had breached the alleged oral contract until June of 2008, at which time the limitations period began. The complaint was filed on September 10, 2009, well within the six year limitation period.

**2. Was there an oral contract and, if there was one did it include the performance of a background check?**

Adecco claims that there was no oral contract executed between itself and Plaintiffs, arguing that:

> Herlihy has failed to describe with any particularity the terms and conditions of the oral agreement it claims existed with Adecco. . . .  Herlihy has not identified any facts which would demonstrate an oral contract existed. The testimony of James Herlihy is not enough to create a genuine issue of material fact because he does not remember **any** terms of the alleged oral contract, . . . .

(Doc. # 21 at 4) (emphasis in original). This Court disagrees.

The uncontroverted evidence shows that Adecco and Herlihy orally contracted for Adecco to provide a temp-to-hire employee to Herlihy Company and that Herlihy recalls with specificity the terms of that contract. Adecco and Herlihy agreed that the employee was required to have specific office skills that would permit him or her to perform payroll and bookkeeping, receive customer payments, prepare paperwork, and make bank deposits. The parties further agreed that the employee would be chosen by Herlihy from three candidates provided by Adecco. Adecco and Herlihy agreed to the rate of pay for the employee, the markup paid to Adecco on the rate of pay for the employee, and the manner in which Herlihy Company would be billed. Finally, the parties agreed that if Herlihy Company was satisfied with the employee provided, Herlihy could negotiate a buyout for that employee, who would then become an employee of Herlihy Company. If, however, Herlihy was not satisfied with the employee, the parties agreed that Adecco would provide another candidate.

Indeed, the only term of the oral contract disputed is whether Adecco agreed to perform a background check on the candidates it provided to Herlihy Company. In that regard, Adecco argues that Plaintiffs have not established with sufficient particularity the terms of the alleged agreement to perform the background check because:

> A "background check" is a generic term that can encompass a wide range of services. Herlihy has been unable to demonstrate what specific services formed the basis of the background check.

(Doc. # 19-1 at 12.) Adecco asserts that a background check could include "a criminal background review, a felony check, a credit report, or a reference check." (Doc. # 21 at 1.) Further, Adecco contends that Herlihy does not recall the number of times he discussed the background check with Adecco, whether the parties discussed how long the background check would take and how much it would cost. Nor, Adecco contends, was Herlihy able "to testify as to its scope – *i.e.*, the specific states/counties which should be reached, how many years should be reviewed, whether the check should be run on all crimes or just felonies, if the check should include any former names for which the candidate was known." (Doc. # 19-1 at 12.) The Court is not persuaded by Adecco's arguments.

The ordinary meaning of "background check," at least encompasses a criminal background check. *See Winningham v. N. Am. Resources Corp.*, 42 F.3d 981, 985 (6th Cir. 1994) (a court must give the ordinary meaning to an unambiguous contract term) (citing *Karabin v. State Auto Mut. Ins. Co.*, 10 Ohio St. 3d 163 (1984)). If a background check had been performed, there is no dispute that Nickison's criminal background (all of her crimes were committed in central Ohio, where Herlihy Company is located) would have been uncovered and that she would not have been hired by Herlihy Company.

9

With regard to Adecco's additional arguments, there would have been no need for Herlihy to determine the cost of the background check outside of the cost he had already negotiated for a background checked employee. Nor would there be a need to inquire as to the time a background check would require. Herlihy testified that he told the Adecco employee, "We have to have a background check," to which she responded, "We do it." (Herlihy Dep. at 81.) Later, Herlihy asked her, "The people that are coming over are going to have a background check, right?" to which the Adecco employee responded, "Yes." *Id.* at 96. These alleged exchanges evidence an agreement for Adecco to provide an individual who not only possessed all of the other qualifications agreed upon, but also one that had been background checked before he or she was sent to Herlihy Company.

Further, Adecco's own computer system undermines its argument related to the ambiguity of the term "background check." That is, Adecco refers to the term "background" to mean a criminal records check. Adecco's computer system has tabs for "Personal Info.," "Education," "Referrals," "Prev Emply.," "Ref. Check," "Training," "Skills" and "Background." (Rolsen Dep. Ex. C.) Kept in the "Background" file is the National Criminal Records File background check for the employee provided to Adecco by Choicepoint Services, Inc. (Rolsen Dep. Exs. C, D, E.)

Based on the foregoing, the Court concludes that there is a genuine issue of material fact as to whether the oral contract executed between Plaintiffs and Adecco included the requirement that Adecco provide only those candidates that had their criminal history checked. The evidence presents sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 251- 52. Accordingly, the Court **DENIES** Defendant's motion for summary judgment as it relates to

Plaintiffs' breach of oral contract claim.

**C.  Negligence**

Plaintiffs allege that Adecco breached a duty to Herlihy Company by not performing a background check on Nickison prior to presenting Nickison for a job interview at Herlihy Company.  Under Ohio law, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim."  *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981).  The "tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed."  *Thornton v. Cangialosi*, No. 2:09-cv-858, 2010 U.S. Dist. LEXIS 51818 (S.D. Ohio May 26, 2010) (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151 (Ohio App. 1996)).  "If the tort claim is factually intertwined with the breach of contract claim such that the two cannot be separated, recovery cannot be had for both."  *Id.* (citation omitted).

Adecco argues that it is entitled to summary judgment on Plaintiffs' negligence claim because Adecco had no independent duty to conduct a background check on Nickison.  This Court agrees.

Adecco correctly points out that Ohio case law stands for the proposition that an employer has no duty to conduct a criminal background check on a potential employee.  *See Rozzi v. Star Personnel Serv's, Inc.*, 2007 Ohio App. LEXIS 2381, at *8, 2007 Ohio 2555, P15 (Ohio App. May 29, 2007) (granting summary judgment in favor of a staffing company because the company "did not have a legal duty to run a criminal background check on potential

11

employees. And there was no contract in place between [the staffing company and employer] that placed a duty on [the staffing company] to perform criminal background checks") (relying on *Steppe v. Kmart Stores*, 136 Ohio App.3d 454, 466-67 (Ohio App. 1999), *Kuhn v. Youlten*, 118 Ohio App.3d 168, 177 (Ohio App. 1997), and *Peters v. Ashtabula Metro. Hous. Auth.*, 89 Ohio App.3d 458 (Ohio App. 1993)). Without a duty to perform the background check, Adecco cannot be found to be negligent for failing to conduct such a check.

Accordingly, the Court **GRANTS** Adecco's motion for summary judgment as it relates to Plaintiffs' negligence claim.

### IV. Conclusion

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Defendant's motion for summary judgment. (Doc. # 19.) Specifically, the Court **GRANTS** Defendant's motion as it relates to Plaintiffs' breach of written contract and negligence claims and **DENIES** the motion as it relates to Plaintiffs' breach of oral contract claim.

**IT IS SO ORDERED.**

        **/s/ Gregory L. Frost**
        **GREGORY L. FROST**
        **UNITED STATES DISTRICT JUDGE**