UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HERLIHY MOVING &
STORAGE, INC., et al.,**

        **Plaintiffs,**        Case No.: 2:09-cv-931
                                          JUDGE GREGORY L. FROST
   **v.**                          Magistrate Judge Norah McCann King

**ADECCO USA, INC.,**

        **Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Brief on the Set-Off Issue (ECF No. 42) and Defendant's Memorandum in Opposition to Plaintiffs' Brief on Setoff Issue (ECF No. 43). For the reasons that follow, the Court concludes that Defendant is entitled to a setoff in the amount Plaintiffs received from third party settlements.

**I. Background**

Plaintiffs filed this action claiming that Defendant was liable to them for approximately $203,000 that was stolen from them by an employee, Shannon Nickison, who was provided to them by Defendant, a temporary employee placement service. Defendant filed a motion for summary judgment and this Court denied that motion with regard to Plaintiffs' claim that Defendant breached an oral contract that required it to conduct a background check on Nickison. That claim was tried to a jury on January 3, 2011 through January 5, 2011. Plaintiffs argued that Defendant's breach of the oral contract proximately caused Plaintiffs a $203,000 loss. The jury found in favor of Plaintiffs and determined that Plaintiffs proved that Defendant's breached an

1

oral contract to conduct a background check on Nickison and that the breach proximately caused Plaintiffs to incur damages in the amount of $65,533.02.

Prior to the start of the trial, Plaintiffs requested that the Court prohibit the introduction of any evidence related to payments Plaintiffs received from other sources to compensate them for the loss of the money Nickison stole. There was then and is now no dispute as to the amount Plaintiffs received in settlement from the financial institution that accepted the fraudulent checks from Nickison and from Plaintiffs' insurance company.[1] Plaintiffs also received a judgment against Nickison and her husband for the entire $203,000 loss. Nickison's husband appealed the judgment as it related to him and the Ohio Tenth District Court of Appeals affirmed the judgment against him. He has paid approximately $16,000 of the judgment. Defendant argued that the collateral source payment evidence should be presented to the jury. Over that objection, this Court granted Plaintiffs' request and prohibited evidence of any other payments made to Plaintiffs related to the Nickison theft. The Court indicated that if the jury returned a verdict in favor of Plaintiffs it would determine the amount of sefoff post-trial.

The parties now disagree as to whether the jury award to Plaintiffs should be offset by the amount of the third party payments. It is undisputed that the amount Plaintiffs have actually received from third parties is greater than the amount the jury awarded to Plaintiffs. Thus, if the Court permits a setoff, even of only the amount Plaintiffs have actually received and not the amount Plaintiffs have the potential to receive from the wage garnishment of Nickison's husband, Defendant will owe nothing to Plaintiffs. The Court permitted Plaintiffs to file a brief

---

[1] The Court will not specify the amounts Plaintiffs received in settlement because the settlements are subject to confidentiality provisions which prohibit the dissemination of that information.

on the issue and for Defendant to file a response to that brief.

## II. Applicable Law

The parties agree that the basis for granting a defendant a setoff in the amount of damages it owes is the notion that a plaintiff should not receive more than one recovery for the same damages. *See Celmer v. Rodgers.Celmer v. Rodgers*, 2005 Ohio 7055, No. 2004-T-0083, 2005 Ohio App. LEXIS 6336 (Ohio Ct. App. Dec. 29, 2005)  The parties also agree that where no potential for double recovery by the plaintiff has been demonstrated, setoff should not be permitted. *See Howard v. Seidler*, 689 N.E.2d 572 (Ohio Ct. App. 1996). Finally, Defendant does not dispute Plaintiffs' assertion that "the defendant who seeks to take advantage of this [setoff] credit bears the burden of proving the amount of credit to which he is entitled." (ECF No. 42 at 3) (relying on *Goodrich Corp. v. Commercial Union Ins. Co.*, 2008 Ohio 3200, Nos. 23585 and 23586, 2008 Ohio App. LEXIS 2716 (Ohio Ct. App. June 30, 2008), which stated: "It has been held in other jurisdictions that, 'because [settlement] credit is in the nature of an affirmative defense on the issue of damages, the defendant who seeks to take advantage of this credit bears the burden of proving the amount of credit to which he is entitled.' ") (citations omitted).

Aside from the law related to setoff, Defendant also argues that the setoff issue "requires an analysis of the collateral source rule . . . under which a plaintiff's recovery from sources other than the wrongdoer are deemed irrelevant on the issue of damages." (ECF No. 43 at 2.) Defendant, however, is mistaken with regard to this issue. The collateral source doctrine, unlike the law related to setoff, actually allows more than one recovery for the same loss. *See State ex rel. Stacy v. Batavia Local Sch. Dist. Bd. of Educ.*, 829 N.E.2d 298, 307 (Ohio 2005) (quoting

*Pryor v. Webber*, 263 N.E.2d 235, paragraph two of the syllabus (Ohio 1970): "The collateral source rule is an exception to the general rule of compensatory damages in a tort action, and evidence of compensation from collateral sources is not admissible to diminish the damages for which a tort-feasor must pay for his negligent act."). Therefore, the collateral source doctrine, even if it were applicable to a contract action, has no application to here. *See e.g., Seidler, Celmer, and Goodrich*, *supra* (these cases do not rely on the collateral source doctrine to determine whether setoff was appropriate).

### III. Discussion

Plaintiffs argue that the jury award should not be offset by amounts Plaintiffs have received from third parties because Defendant cannot prove that there is a potential for Plaintiffs to receive a double recovery for the same damages. Plaintiffs' argument is not well taken.

Ohio courts generally find it inappropriate to allow a setoff in situations where evidence of a plaintiff's third party payments was admitted into evidence for the jury's consideration. *See e.g., Jordan v. Westfield Insurance Co.*, 2008 Ohio 1542 , 2008 Ohio App. LEXIS 1354, at *24-25 (Ohio Ct. App. March 20, 2008) (Defendant's post-trial motion for setoffs of the jury verdict was denied where the jury heard evidence of collateral source payments and presumptively considered them in reaching its verdict despite the fact that the jury instructions failed to explain how the collateral source evidence should be applied.). However, in cases like the instant action where a jury has not received evidence of collateral payments, the jury obviously could not have deducted those payments from its damage award. Therefore, Ohio courts generally require the trial judge to make a post-verdict setoff based on the plaintiff's collateral recovery. *See e.g., Roberts v. State Farm Mutual Auto Ins. Co.*, 2003 Ohio 5398, 802

N.E.2d 157 (Ohio App. 2nd Dist. 2003) (trial court properly allowed setoff where "the jury did not receive evidence regarding the collateral source payment" received in settlement); *Kirby v. Barletto*, 2009 Ohio 5090, 2009 Ohio App. LEXIS 4280, at *15-16 (Ohio Ct. App. Sept. 17, 2009) (trial court properly deducted collateral source payments from the damage award since the jury did not receive evidence of the collateral payments.)

Plaintiffs argue that, in the instant action the offset issue should not be determined by whether or not evidence of the collateral payments were submitted to the jury.  Instead, Plaintiffs cite the Court to three cases to support their position that Defendant should not receive an offset even though the collateral payment evidence was not submitted to the jury: *Vosgerichian v. Mancini Shah & Assoc.*, Nos. 68931 and 68943, 1996 Ohio App. LEXIS 788 (Ohio Ct. App. Feb. 29, 1996); *Goodrich*, 2008 Ohio App. LEXIS 2716*,* and *Quantum Capital Ventures, LLC v. Evans*, 2004 Ohio 3173, No. CA2003-03-032, 2004 Ohio App. LEXIS 2876 (Ohio Ct. App. June 21, 2004).  Plaintiffs argue that in each of these cases the defendants failed to show that the collateral monies received by the plaintiffs were for the same loss as the jury award.  Therefore, in those cases there was no potential for double recovery and the defendant was not entitled to an offset.  Plaintiffs contend that this case presents the same situation; that is, because the jury did not indicate what specific damages were included in its damage award Defendant cannot show that the jury award was for the same loss as were the collateral monies Plaintiffs received.  This Court, however, finds these cases distinguishable in material ways.

In *Vosgerichian*, the jury heard evidence related to the fault of three defendants.  Before the end of the trial, however, two of the defendants were released, one on directed verdict and one because of settlement.  The jury was specifically instructed to determine damages solely

caused by the remaining defendant and the jury instructions were carefully crafted to prevent jury confusion and avoid the problem of double compensation for the same loss.  Unlike the situation in *Vosgerichian*, in the case *sub judice* the jury had no information that there were other parties that could have been held responsible for any loss related to Nickison's theft.  Plaintiffs put forth evidence that it was Defendant's breach of the parties' contract that caused the entire $203,000 loss and asked the jury to award them $203,000 from Defendant.

In *Goodrich*, the plaintiff sued several of its excess insurance carriers for breach of contract and bad faith.  The claims focused on whether the insurers were contractually obligated to indemnify the plaintiff, Goodrich, for claims by the federal government relating to soil groundwater contamination caused by Goodrich's plant in Calvert City, Kentucky from 1963 to 1983.  Goodrich settled with several of the excess carriers and the case proceeded to trial against the remaining insurers.  The court of appeals affirmed the trial court's refusal to allow a setoff because the trial "record fails to even suggest that any of Goodrich's negotiated settlements with its other insurers was intended to merely compensate Goodrich for" the same damages that Goodrich recovered from the jury award.  2008 Ohio App. LEXIS 2716, at *22.

Plaintiffs argue that this case is analogous to *Goodrich* because in both cases the jury did not indicate what specific damages were included in its damage award, there was no evidence that the jury awards were intended to compensate Goodrich or Plaintiffs for the same damages recovered against the third parties who settled, and there is always the possibility that the amounts of the third party settlements were not confined to compensating Goodrich or Plaintiffs for their property damage because defendants settle for many reasons in addition to compensating a plaintiff for its injury.

Plaintiffs, however, fail to recognize that in *Goodrich*, unlike in the instant action, the third parties "paid for a release from liability to Goodrich for a much wider array of claims than simply EDC groundwater remediation at Calvert City [Kentucky]. Goodrich released the settling insurers from liability for the cleanup of other contaminants and from liability for claims for personal injury and other property damage." *Id.* at *23. In other words, the jury returned a verdict against the defendants for a particular loss Goodrich incurred at a particular location, *i.e.*, groundwater contamination in Calvert City, Kentucky. The insurers that settled did so for the losses Goodrich claimed as a result of groundwater contamination losses at Calvert City, Kentucky *and* for losses claimed as a result of other types of contamination in other locations. Therefore, the defendants could not show that Goodrich's settlement with the other insurers was for the same damages that Goodrich recovered from the jury. In the instant action, there were no other locations of loss, like the other sites requiring cleanup in *Goodrich*, nor any other types of loss, like the damages caused by contaminates other than groundwater contamination that the settling parties may have paid. There was only one location of loss and only one type of loss: the theft of money from Plaintiffs' business.

The final case upon which Plaintiffs rely is *Quantum Capital Ventures, LLC v. Evans*, a case involving three individuals who formed a limited liability corporation and deposited their initial contributions in a bank. Evans withdrew from the corporation and unilaterally withdrew from the bank more than his interest in the corporation. The bank settled with the plaintiff, QVC, for $10,000. QVC went to trial against Evans and was awarded $9,519.23. After the trial, Evans asked for the $10,000 to be offset and the trial court denied that request. The appellate court affirmed the trial court indicating that the claims the plaintiff filed against Evans were

separate and distinct from those filed against the bank:

> In the Complaint it was alleged that . . . Oak Hills Bank was negligent in permitting the withdrawal of funds and, as a result thereof, it impaired the ability of [QVC] to obtain investment and resulted in damage to reputation of [QVC]. The allegations directed towards [appellant] concern a breach of contract and the inappropriate withdrawal of funds by [appellant] in violation of the Operating Agreement.

*Evans*, 2004 Ohio App. LEXIS, at *10-11 (omission and alterations in original) (quoting trial court).

Plaintiffs argue that they, like the plaintiff in *Evans*, possessed claims against the settling parties that were separate and distinct from those they filed against Defendant. What Plaintiffs fail to recognize is that in *Evans* there was the potential for separate damages from each claim, which is simply not the case in the instant action. While the Court agrees that, like in *Evans*, Plaintiffs here could have filed different claims against the settling parties, unlike in *Evans*, Plaintiffs only damages were the amount of the theft. In *Evans* there was the loss of the funds withdrawn from the bank but there were also the additional alleged damages against the settling parties regarding the impaired ability to obtain investment and damages to reputation.

The Court finds that in this case, like in the usual case, a failure to reduce the jury award would result in Plaintiffs' receipt of compensation in excess of the value the jury assigned to their loss. *See Kirby*, 2009 Ohio App. LEXIS 4280, at *15-16 ("To fail to reduce the jury verdict would result in [the plaintiffs'] receipt of compensation in excess of the value the jury assigned to their loss . . . ."). Further, the Court agrees with Defendant that the denial of offset would unfairly prejudice it because "it would be denied both the ability to apprise the jury of the true net amount of Plaintiffs' loss and its right to a setoff of those amounts." (ECF No. 43 at 9.) Finally, while it is true that it now appears that Defendant will receive a windfall, that would not

be the case had the jury assigned the value of Plaintiffs' loss to be what Plaintiffs claimed it to be. In cases like this one, Ohio courts view the windfall as being on the plaintiff who would be compensated in an amount that is more than the jury assigned to the loss absent setoff:

> Here, the jury did not receive evidence regarding the collateral source payment by State Farm to the Robertses, so it did not consider the State Farm payment in determining the amount of damages owed to Roberts. The jury determined that Roberts was injured and that her injuries could be made whole by compensating her in the amount of $ 92,000. Given that Roberts had already received compensation in the amount of $ 100,000 from State Farm, the jury's award establishes that she has already been fully compensated. To fail to reduce Roberts's verdict against National Union by the amount of the settlement with State Farm would result in Roberts's receiving compensation in an amount double the value the jury placed upon her loss-*i.e.*, a windfall.

*Roberts*, 802 N.E.2d at 166.

### IV.  Conclusion

Based on the foregoing, the Court concludes that Defendant has the right to setoff the amounts Plaintiffs have received from third parties for their loss related to Nickison's theft. The Court **ORDERS** a setoff from the jury award to Plaintiffs in the amounts Plaintiffs received from the bank, the insurance company, and Nickison's husband. Based on the amounts provided to this Court under seal, the Court **ENTERS JUDGMENT** in favor of Plaintiff and awards zero dollars in damages. This is a final and appealable Order.

**IT IS SO ORDERED.**

      **/s/ Gregory L. Frost**
      **GREGORY L. FROST**
      **UNITED STATES DISTRICT JUDGE**